# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| MATTHEW DUNCAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:16-cv-00916-SGC |
| TYCO FIRE PRODUCTS, LP, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

The court has before it the November 14, 2017 motion for summary judgment filed by Defendant Tyco Fire Products, LP ("Tyco"). (Doc. 25). Pursuant to the court's initial order and orders dated December 11, 2017, and December 20, 2017, the motion was under submission as of January 16, 2018. (Docs. 17, 33, 35). After consideration of the briefs and evidence, the motion is due to be granted for the following reasons.

## I.    STATEMENT OF FACTS

Tyco manufactures water-based fire suppression system components and ancillary building construction products. (Doc. 27-6 at 1). Plaintiff Matthew Duncan was hired in February 2012, at the Tyco facility in Anniston, Alabama.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

(Doc. 27-2 at 6; Doc. 27-3 at 13-14). Duncan worked as an hourly employee in the finishing department. (Doc. 27-1 at 28).

### A. Tyco Benefits and Policies

When he was hired, Duncan participated in orientation, which included the benefits enrollment process. (*Id*. at 3). Tyco employees select their own benefit elections on the website MyTycoHR.com. (*Id*.). Tyco provides employees access to a computer at the Anniston facility, where they complete their benefit elections and enrollments. (*Id*.). Duncan was given the paperwork discussing the available benefits, and he completed his benefit elections on the computer at the facility. (Doc. 27-1 at 24). Duncan elected to receive $30,000 in coverage for his wife under the spouse/domestic partner supplemental life insurance policy. (Doc. 27-4 at 15; Doc. 24-5 at 11).

Benefits are administered through the Tyco EmployeeAccess group and not at the plant level. (Doc. 27-6 at 6). Employees can contact MyTycoHR.com or EmployeeAccess at a toll-free number with any questions about their benefits. (*Id*. at 3-4). Additionally, plan documents are available at MyTycoHR.com. (*Id*. at 35).

As part of the benefits enrollment process, Duncan provided a contact address to receive his benefit notifications. (Doc. 27-6 at 34). Duncan provided the same address in his contact information during orientation. (Doc. 27-1 at 28).

Duncan has lived at that address for approximately ten years and lived at the address at the time of his deposition. (*Id*. at 4). An employee can change the address for benefits notification through the MyTycoHR.com website or by contacting EmployeeAccess at the toll-free number. (Doc. 27-4 at 11; Doc. 27-6 at 4). Duncan never made any changes to his address.

Tyco has a military leave of absence policy providing for the possibility of compensation and continued benefits for a Tyco employee on active military service. (Doc. 27-4 at 10-11; Doc. 27-6 at 4, 8-16). The policy was available to Duncan with all the other plan documents on MyTycoHR.com. (*Id*. at 4). The military leave of absence policy in place at the time of Duncan's military leave became effective on January 31, 2010.[2] (*Id*.; Doc. 27-4 at 9-10).

The applicable military leave of absence policy provides a Tyco employee with "differential military leave pay" while serving on military duty if the employee meets the eligibility requirements to receive the pay. (Doc. 27-6 at 4). To receive "differential military leave pay" an employee's military pay must be less than his Tyco pay. (*Id*. at 4, 9). Specifically, the policy states, "[In the event that Military Earnings are greater than the employee's Regular Rate of Pay, no

---

[2] Plaintiff's contention the 2001 policy was the one in place at the time of his military leave and/or the 2010 policy did not exist is not supported by the record. (Doc. 36 at 3, 14). Marc Turco, the director of global manufacturing, properly identified the 2010 version of the policy. (Doc. 27-4 at 9-10). Although Turco admitted he was not familiar with the policy because he did not regularly administer it in his position, he clearly testified he was aware there was a policy. (*Id*. at 7, 9-10).

Differential Military Leave Pay will be paid to the employee." (*Id*. at 9). If an employee is not eligible for differential military leave pay, the employee will be provided with unpaid time off for a military leave in accordance with USERRA and governing state laws. (*Id*. at 11-12, 14-15).

The military leave of absence policy also provides eligible employees on active duty the ability to continue welfare benefits while on active military leave. (Doc. 27-5 at 9). Specifically relating to supplemental life insurance benefits, the policy states:

> While on Active Military Duty Leave of Absence, all welfare benefits offered by the Company in which the employee was participating while an active employee of the Company may continue as long as all required employee contributions are satisfied during the Active Military Leave of Absence, either through withholding from Differential Military Pay, or through direct payments by the employee if there is either insufficient or no Military Differential Pay from which to withhold all required employee contributions.

(*Id*).

**B. Duncan's Military Leave**

Duncan actively served in the military from 1981 until 1995 and then joined the National Guard. (Doc. 27-1 at 4). On March 11, 2013, while working at Tyco, Duncan received orders to report for overseas deployment on June 20, 2013. (*Id.* at 40; Doc. 27-3 at 31). Duncan made $12.52 an hour at the time he went on military leave, which equates to approximately $2,000 per month. (Doc. 27-6 at 4-5). His military pay was in excess of $6,000 per month. (Doc. 27-1 at 6). Because

his military pay was greater than his rate of pay at Tyco, Duncan did not receive any payments from Tyco while on military leave. (Doc. 27-6 at 4).

Because Duncan was not making any wages while on military leave, he was responsible for paying his portion of premiums, including the premiums for his spouse/domestic partner supplemental life insurance policy. (Doc. 27-5 at 9). In accordance with their standard policy, Tyco sent two direct payment invoices to Duncan regarding his payment obligations to the address he provided when he elected his benefits.[3] (Doc. 27-6 at 34, 39-44). The first invoice was dated August 6, 2013, and the second was dated September 6, 2013. (*Id*.). The September 6, 2013 invoice advised Duncan benefits coverage would end retroactively on the last day of the month for which the full premium was paid if payment was not received by October 1, 2013. (*Id*. at 43). Duncan did not make the payments requested in the August and September invoices. (*Id*. at 35). On October 2, 2018, Tyco sent Duncan a notice of benefit termination. (*Id*. at 45). The notice stated his coverage was cancelled for nonpayment effective July 1, 2013, the end of the last month in which Duncan paid his premiums. (*Id*.).

During Duncan's deployment, his wife battled cancer and passed away on February 26, 2014. (Doc. 1 at 4; Doc. 27-1 at 18). Duncan returned from active service in May 2014 and resumed his same position at Tyco. (Doc. 27-1 at 25;

---

[3] When Duncan returned home from active military service, he found each of the direct payment invoices unopened in their envelopes. (Doc. 27-1 at 19).

Doc. 27-6 at 6). When he returned, Duncan inquired about the insurance proceeds for the spouse/domestic partner life insurance policy. (Doc. 27-6 at 6). Tyco submitted a claim for the benefits on Duncan's behalf but was told the policy lapsed due to nonpayment of premiums. (*Id*. at 36). Additionally, Duncan called the Tyco EmployeeAccess number after his return and was told the insurer declined payment under the policy as it had lapsed because he did not pay the premiums. (Doc. 27-1 at 22-23).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

## III. DISCUSSION

Plaintiff's complaint states two claims. First, Duncan contends he was wrongfully denied full pay while on military leave and denied life insurance proceeds under a spouse/domestic partner supplemental life policy after the death of his wife in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[4] (Doc. 1 at 4-5). Second, Duncan alleges this denial of pay and insurance proceeds constitutes race discrimination in violation of 42 U.S.C. § 1981. (*Id*. at 5-6). After careful review and for the reasons stated below,

---

[4] Plaintiff's complaint alleges violations of 38 U.S.C. §§ 4311 and 4312. (Doc. 1 at 4). Section 4311 prohibits discrimination on the basis of military service. Section 4312 addresses the right to reemployment upon return from military service. Benefits are addressed under § 4316. It is unclear from the allegations in the complaint and from Plaintiff's brief in opposition to summary judgment which provisions Plaintiff contends Tyco violated. Most of his arguments have little to nothing to do with discrimination under § 4311, and there are no allegations under § 4312 that Duncan was not returned to the same position with the same pay upon his return from service. Additionally, the complaint and opposition brief do not even mention § 4316.

7

the court concludes there are no material issues of fact in this case and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### A. USERRA Claims

USERRA was enacted, in part, "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C.A. § 4301(a)(3). Accordingly, USERRA provides that "[a] person who is a member of . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership . . . or obligation." 38 U.S.C.A. § 4311(a). USERRA defines "benefit" or "benefit of employment" as "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice . . . ." 38 U.S.C.A. § 4303(2). Duncan makes two claims under USERRA. First, he contends he should have received the equivalent of forty hours of pay each week while he was on military leave from June 2013 until May 2014. Second, he alleges he was wrongfully denied life insurance proceeds when his wife passed away in February 2014. The court addresses each claim separately.

### 1. Pay while on leave

Duncan contends he should have received forty hours of pay each week from Tyco while he was away on active military duty. He alleges in his complaint he was discriminated against by Tyco in violation of USERRA when Tyco denied him this pay. (Doc. 1 at 4). His argument fails.

USERRA "does not require an employer to pay an employee for time away from work performing service, [but] an employer policy, plan, or practice that provides such a benefit is permissible under USERRA." 20 C.F.R. § 1002.7; *see* 38 U.S.C. § 4316(b)(1)(B). In other words, when an employer provides paid military leave under its policies, it does so above and beyond any requirements in USERRA. *Gross v. PPG Indus., Inc.,* 636 F.3d 884, 891 (7th Cir. 2011). Additionally, USERRA does not require employers to provide military employees benefits that exceed those benefits offered to other employees generally. *Id.* at 889 (citing *Crews v. City of Mt. Vernon*, 567 F.3d 860, 866 (7th Cir. 2009).

Tyco provided military employees with Differential Military Pay, an added benefit beyond what USERRA requires and beyond what other employees on any other type of leave would receive. Duncan was not eligible for the Differential Military Pay, however, because his military earnings exceeded his Tyco wages. Nothing in USERRA required Tyco to pay Duncan anything while he was on military leave. Tyco's policy provided greater benefits than those mandated by

USERRA. As such, Tyco did not deny Duncan a "benefit of employment" under USERRA.

Instead of focusing on the requirements of USERRA, Duncan's argument centers on his allegations that Tyco violated its company policy regarding military leave of absence pay. Duncan spends the vast majority of his brief attempting to establish the 2010 version of the USERRA policy did not exist and the 2001 policy was the one Tyco should have followed with respect to Duncan's military leave and pay. The September 2001 version of the policy provided mobilized reservists with full base pay for the first year of mobilization, in addition to any pay received from the military. (Doc. 27-4 at 40-41). For the next year, reservists were paid the difference between their military pay and their regular pay. (*Id*.). The evidence does not support Duncan's argument.

The 2001 version of the policy was not in effect when Duncan went on leave in 2013. Marc Turco's testimony does not change this undisputed fact. Turco clearly testified there was a policy in place in 2014, but he was not familiar with the policy because he did not regularly administer it in his position as director of global manufacturing. (Doc. 27-4 at 9-10). The 2010 version applied to Duncan's leave and only allowed for pay when an employee's military pay was less than his

Tyco wages. Duncan undisputedly made far more money during his active military service than he did at Tyco.⁵

Simply put, the undisputed facts do not establish a violation of USERRA with regard to Duncan's pay wile on military leave. USERRA does not require employers to provide military employees benefits that exceed those benefits offered to other employees. The Differential Pay Policy was an extra benefit provided to military service members on active leave, and Duncan did not qualify.⁶ As such, Defendant is entitled to summary judgment as to this claim.

### 2. Life insurance cancellation

Section 4316 governs benefits under USERRA. The statute distinguishes between benefits based on seniority and those not based on seniority. 38 U.S.C. §§ 4303(12), 4316. The benefit at issue here, the $30,000 life insurance policy, is a benefit not determined by seniority under USERRA. *See Petty v. Metropolitan Government of Nashville-Davidson County*, 538 F.3d 431, 445 n.8 (6th Cir. 2008). As applicable here, USERRA provides service members with "such other rights and benefits not determined by seniority, status, and pay who are on furlough or

---

⁵ Plaintiff's arguments regarding the declaration of Greg Terry and Defendant's corporate representative deposition are nothing more than speculation and do not address the merits of Plaintiff's claims or Defendant's contentions in support of summary judgment. (Doc. 36 at 5-7).
⁶ Additionally, the court rejects Plaintiff's arguments regarding his reliance on the language in an old handbook and oral representations by a non-management employee in concluding he was entitled to pay during his military leave. (Doc. 36 at 2-5). Duncan does not point to, and the court cannot find, any portion of USERRA, the implementing regulations, or case law establishing reliance as an element of any claim under USERRA.

11

leave of absence under a contract, agreement, policy, practice or plan in effect at the commencement of such service or established while such person performs such service. 38 U.S.C. § 4316(b)(1)(B). "Congress sought by § 4616(b)(1) to guarantee a measure of equality of treatment with respect to military and non-military leave and to strike an appropriate balance between benefits to employee-service persons and costs to employers." *Rogers v. City of Antonio*, 392 F.3d 758, 769-70 (5th Cir. 2004). In other words, USERRA required Tyco to treat Duncan in the same manner as any other employee on leave of absence.

USERRA explicitly permits an employer to require an employee to continue paying the employee's portion of a life insurance premium during his military leave. "Such a person may be required to pay the employee cost, if any, of any funded benefit continued . . . to the extent other employees on furlough or leave of absence are so required." 38 U.S.C. § 4316(b)(4). Tyco mailed Duncan direct payment invoices for his unpaid premiums.[7] Tyco uses this process of mailing direct payment invoices for all employees on leave who do not receive a paycheck to pay for their portion of benefit premiums. (Doc. 27-6 at 34).

There is no evidence Tyco treated Duncan differently than any other employee on leave of absence for any other reason. Although the court is

---

[7] It is undisputed Tyco mailed the invoices to the address provided by Duncan. Contrary to Duncan's argument, nothing in USERRA requires an employer to change an employee's address when an employee is on military leave.

12

sympathetic to Duncan and the unfortunate series of events he experienced, "USERRA does not authorize the courts to add to or detract from" the provisions of USERRA. *Rogers*, 392 F.3d at 770. Tyco mailed the direct payment invoices, the premiums were not paid, and the policy was cancelled.[8] As such, Duncan has failed to establish any violation of USERRA with regard to the life insurance.

### B. Section 1981 Discrimination

Duncan contends he was discriminated against because of his race in violation of section 1981 when Tyco failed to pay him while on leave and when he was denied the life insurance proceeds after his wife passed away. Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975). In reviewing § 1981 claims, the court relies on the same analytical framework and requirements of proof that we employ in Title VII cases. *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

A disparate treatment claim based on circumstantial evidence, as the one presented here, is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 1331-33; *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). To establish a prima

---

[8] Duncan does not dispute the reason for the cancellation of his insurance but again offers a reliance argument as to why he did not believe premiums were due. (Doc. 36 at 3-4). There is nothing in USERRA stating reliance is an element of any claim under the statute.

facie case of disparate treatment, the plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside his class more favorably; and (4) he was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). After a prima facie case is established, the employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Wilson*, 376 F.3d at 1087. This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). As long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). After an employer articulates one or more legitimate, non-discriminatory reasons for the employment action, the plaintiff must show the proffered reason was a pretext for illegal discrimination. *Id*. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must "meet that reason head on and rebut it." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000).

### 1. No prima facie case of discrimination

Plaintiff's prima facie case fails because he cannot identify a similarly situated comparator who was treated more favorably than he was treated.[9] The employees identified by a plaintiff as comparators must be similarly situated in all relevant respects. *Wilson*, 376 F.3d at 1091; *Holifield*, 115 F.3d at 1562. The Eleventh Circuit has held this to mean that "[t]he comparator must be nearly identical to the plaintiff." *Wilson*, 376 F.3d at 1091; *Mannicia*, 171 F.3d at 1368. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia*, 171 F.3d at 1368 (quotations omitted). Thus, the Eleventh Circuit requires "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id*. Even if a plaintiff and comparator are similar in some respects, differences in their overall record may render them not "similarly situated" for purposes of establishing a prima facie case. *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-19 (11th Cir. 2003) (employee and comparator who committed the same act were not similarly situated because the comparator's overall record was better).

---

[9] Defendant does not dispute the other elements of Plaintiff's prima facie. The court assumes, without deciding, Plaintiff established the other three elements.

Duncan points to John Worrell as his alleged comparator. (Doc. 36 at 12). Duncan argues Worrell, a white employee, took military leave in 2003 and Tyco continued his pay. (*Id*.). Duncan contends he "was informed the same policy applied to him," but he was not paid. (*Id*.). Defendant contends Worrell is not a suitable comparator because Worrell took his military leave under a different version of the military leave of absence policy. (Doc. 26 at 31-32).

Arguments aside, there is no evidence in the record regarding John Worrell, his employment with Tyco, and his military leave of absence. The citations provided by both parties do not establish anything about John Worrell. Instead, the evidence cited provides information related only to the older military leave policy. Plaintiff's allegations in his complaint and statements in his brief are insufficient to establish John Worrell as a sufficient comparator.

Because Plaintiff cannot identify a similarly situated comparator who was treated more favorably than he was treated, his prima facie case fails. That being said, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Wilson*, 376 F.3d at 1092 (citations omitted). Duncan has failed to present any other evidence of discrimination.

### 2. Defendant's legitimate, nondiscriminatory reasons

Defendant has carried its "exceedingly light" burden of articulating legitimate, nondiscriminatory reasons for the adverse employment actions. Tyco did not pay Duncan any wages while he was on military leave because he did not qualify for Differential Military Pay under the military leave of absence policy. Additionally, the life insurance policy was cancelled because Duncan failed to pay the premiums while on leave.

### 3. Plaintiff's failure to rebut

Because Defendant satisfied its burden of production of a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude the reasons Defendant gave were pretextual. *Burdine*, 450 U.S. at 253. Plaintiff may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348-50 (11th Cir. 2007). Importantly, conclusory allegations of discrimination, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). "A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."

*Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

To show pretext, a plaintiff may not merely quarrel with the wisdom of the employer's reason but must meet the reason head on and rebut it. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *Chapman*, 229 F.3d at 1034. The inquiry into pretext is based on "the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). As the Eleventh Circuit explained, "to be blunt about it," the inquiry does not center "on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266 (explaining the question is not whether the employee actually had performance problems but "whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints . . . as cover for" discrimination).

Duncan attempts to establish pretext by arguing the 2010 version of the military leave policy simply does not exist.[10] As explained in detail above, the evidence does not support Duncan's argument. The evidence shows the policy in place at the time Duncan took his military leave of absence was the 2010 policy. That policy did not allow for differential pay because Duncan earned more from

---

[10] Duncan does not make any pretext argument regarding the life insurance benefits.

his military wages than he did from Tyco. Turco clearly testified there was a policy in place in 2014, but he was not familiar with the policy because he did not regularly administer it in his position as director of global manufacturing. (Doc. 27-4 at 9-10). He did not testify the policy did not exist as argued by Duncan.

Plaintiff has failed to establish the reasons stated were a pretext for race discrimination. In fact, there is no evidence in the record "creat[ing] a triable issue concerning the employer's discriminatory intent." *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Simply put, Plaintiff has failed to present any evidence that would allow a jury to infer intentional discrimination by Tyco. *Id.* As such, Defendant is entitled to summary judgment on Plaintiff's claims under § 1981.

## IV. CONCLUSION

For the foregoing reasons, Defendant Tyco Fire Products, LP is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's complaint. Defendant's motion for summary judgment (Doc. 25) is due to be granted. A separate order will be entered.

**DONE** this 5th day of July, 2018.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE